**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:14-cv-23068-KMM

GIPSY ASEFF,

    Plaintiff,

v.

CATLIN SPECIALTY INSURANCE
COMPANY, INC., f/k/a WELLINGTON
SPECIALTY INSURANCE COMPANY,

    Defendant.
                                            /

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court on Plaintiff Gipsy Aseff's and Defendant Catlin Specialty Insurance Company, Inc.'s cross-motions for summary judgment. The parties filed timely responses and replies. This matter is now ripe for review.

For the reasons set forth below, Defendant Catlin Specialty Insurance Company, Inc.'s Motion for Final Summary Judgment (ECF No. 34) is GRANTED.

**I.    BACKGROUND**

This is an insurance coverage dispute brought by Plaintiff Gipsy Aseff against Defendant Catlin Specialty Insurance Company, f/k/a Wellington Specialty Insurance Company ("Catlin"), for the alleged breach of the indemnity and defense provisions of an insurance policy.

Catlin issued a commercial general liability policy (the "Policy") to Rafi Brothers, Inc. ("Rafi Brothers") for the period of November 11, 2006, to November 11, 2007. See generally Commercial General Liability Policy ("Policy") (ECF No. 34-1). The Policy covered claims arising out of bodily injury sustained in connection with Rafi Brothers' automobile dismantling

1

operations at 205 S.E. 10th Avenue, Hialeah, Florida 33012 (the "Property"). See id. It contained a $500,000 per-occurrence aggregate limit for each claim. See id.

Specifically, under the terms of the Policy, Catlin agreed to "pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury,'" caused by an "occurrence," and to "defend the insured against any 'suit' seeking those damages."[1] Id. § I at ¶ 1(a)–(b). As a condition to coverage, Rafi Brothers had to notify Catlin of any "occurrence" or "suit" "as soon as practicable." See id. § IV at ¶ 2. The Policy's notice provisions read as follows:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> **2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1) How, when and where the "occurrence" or offense took place;
> (2) The names and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
> (1) Immediately record the specifics of the claim or "suit" and the date received, and
> (2) Notify as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> \*    \*    \*

---

[1] The Policy defines "bodily injury" as a "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time"; an "occurrence" as an "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"; and a "suit" as "a civil proceeding in which damages because of [sic] 'bodily injury'. . . to which this insurance applies are alleged." Policy § V at ¶¶ 3, 13, 18.

Id. § IV at ¶ 2. The Policy also provided that "[n]otice of all accidents or occurrences must immediately be given to Wellington Specialty Insurance Company whether or not such accidents or occurrences appear likely to involve this policy." Id. at Endorsement 1-1-3-0904.

On January 31, 2007, a mechanic by the name of Daniel Plasencia went to the Property to repair a car. Def.'s Statement of Undisputed Facts ("Def.'s SOF") ¶ 4 (ECF No. 34). While Plasencia was removing the catalytic converter using an acetylene torch, the converter fell on the torch's hose, causing an explosion that engulfed Plasencia in flames (the "Accident"). Def.'s SOF ¶ 5. After lingering in the hospital in and out of consciousness for over four months, Plasencia succumbed to his injuries.[2] Id. ¶ 12. Rafi Brothers was notified of the Accident that same day, or shortly after. Id. ¶ 7.

On July 17, 2008, Pasencia's wife and the plaintiff in this action, Gypsy Aseff, sued Rafi Brothers and Accion 1 Auto Sales, Inc. ("Accion 1"), a junk car dealer that was leasing the Property at the time of the Accident, for the wrongful death of her husband (the "Wrongful Death Action"). Id. ¶¶ 3, 13. Aseff's theory of liability was based, at least in part, on Rafi Brothers' actual or constructive knowledge of property conditions that may have caused or contributed to the Accident. Id. ¶ 13.

Rafi Brothers was served with process four days later. Id. ¶ 14. Upon receipt of service, Rafi Brothers retained Don Gonzalez, Esq., as counsel. Id. ¶ 15. Neither Rafi Brothers nor Gonzalez notified Catlin of the lawsuit at this time. Id.

In prosecution of her claim, Aseff requested Rafi Brothers' liability insurance information. Rafi Brothers reached out to its insurance agent, Pan Am Assurance Agency ("Pan Am"), for a copy of the Policy, claiming it was for an "upcoming court hearing." Id. ¶ 17. Rafi

---

[2] From about mid-February until his death on June 5, 2007, Plasencia was conscious, able to speak, write, and otherwise interact with people. Def.'s SOF ¶ 12.

Brothers, however, never explained the nature of the "upcoming court hearing." Id. In furnishing a copy of the Policy, Pan Am advised Rafi Brothers that it did not have any reported loss on record. Id. ¶ 18. Still, despite being fully aware of the Accident and Wrongful Death Action, Rafi Brothers did not notify Catlin of either at this time. Id. ¶ 19.

It was not until May 25, 2011, when Aseff's counsel reached out to Catlin to see if the insurer would indemnify and defend Rafi Brothers in connection with the lawsuit, that Catlin first received notice of the Accident and Wrongful Death Action. Id. ¶ 25. Catlin immediately contacted Pan Am, which said that it had no knowledge of either event. Catlin then followed up with Rafi Brothers, which confirmed that it had been aware of the litigation for years. Id. ¶ 27. Catlin informed Rafi Brothers that it would investigate the claim under a reservation of rights based on, among other things, breach of the Policy's notice provisions. Id.

Rafi Brothers' failure to notify Catlin of the Accident affected the insurer's ability to conduct an investigation. By the time Catlin received notice, it could no longer speak with Plasencia about the circumstances of the Accident. Id. ¶ 26. It could no longer interview Arquimedes Rafi, Sr., Rafi Brothers' principal and main contact with Accion 1, who visited the Property to collect rent and conduct inspections, and thus would have had unique insight into the Property at the time of incident, regarding Rafi Brothers' knowledge of property conditions that may have caused or contributed to the Accident. Id. It could no longer inspect and document the scene of the Accident. Id. It could no longer obtain witness statements as close in time to the Accident as possible. Id. And it could no longer preserve, obtain, and inspect the equipment involved in the Accident. Id.

Nor was Catlin able to rely on evidence adduced in the wrongful death litigation to assess its rights and liabilities. By the time Catlin received notice, neither Rafi Brothers nor Accion 1

4

had conducted any discovery on the issues of liability and damages. Id. ¶ 25. They had not issued written discovery requests, deposed parties or potential witnesses, sought Plasencia's medical records, or attempted to inspect or preserve—and in fact did not preserve—the equipment involved in the Accident. Id. In fact, much of the equipment involved in the Accident, including the automobile and acetylene torch, was not preserved. Id.

On June 30, 2011, Catlin denied coverage due to Rafi Brothers' failure to give timely notice of the Accident and Wrongful Death Action, and the prejudice caused to Catlin as a result.[3] Id. ¶ 37.

Rafi Brothers and Aseff eventually settled the Wrongful Death Action. As part of the settlement, Rafi Brothers assigned to Aseff all claims and causes of action it may have against Catlin under the Policy. Compl. ¶¶ 37, 41. Aseff also obtained a $5,000,000 consent judgment against Rafi Brothers. Def.'s SOF ¶ 41.

On August 20, 2014, Aseff, as assignee of Rafi Brothers' rights under the Policy, commenced this action against Catlin. The three-count Complaint asserts claims for breach of contract based on Catlin's refusal to indemnify and defend Rafi Brothers in connection with the Wrongful Death Action (Count I), violation of Florida Statutes § 624.155 (Count II), and common law bad faith (Count III). See Compl. ¶¶ 42–63 (ECF No. 1). This Court, however, abated Counts II and III pending resolution of the coverage dispute. (ECF No. 13). The parties now cross-move for summary judgment on Aseff's breach of contract claim.

---

[3] Catlin also denied coverage because of Rafi Brothers' alleged failure to cooperate in the investigation of the claim in breach of the Policy's cooperation provisions. See Def.'s Answer and Affirmative Defenses at 8. On summary judgment, however, Catlin invokes only Rafi Brothers' breach of the Policy's notice provisions.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Fed R. Civ. P. 56. An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Id.

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. Id. (citation omitted). In deciding whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Tyson Foods, Inc., 121 F.3d at 646 (citations omitted). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**III.     DISCUSSION**

The main issue presented is whether Catlin had a duty to indemnify and defend Rafi Brothers in connection with the Wrongful Death Action.  Catlin maintains it did not because Rafi Brothers' failure to give timely notice breached the Policy's notice provisions, relieving Catlin of its contractual obligations.  Aseff, on the other hand, argues that Catlin's denial of coverage breached the Policy's indemnity and defense provisions, despite any late notice.  As shown more fully below, because the untimely notice prejudiced Catlin as a matter of law, Catlin is entitled to summary judgment.[4]

**A.     Legal Framework**

Under Florida law, notice is a condition precedent to coverage, and an insured's failure to provide "timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy."  Ideal Mut. Ins. Co. v. Waldrep, 400 So. 2d 782, 785 (Fla. Dist. Ct. App. 1981).  If an insured's notice is untimely, prejudice to the insurer is presumed, and "the insured can only prevail by rebutting the presumption and demonstrating that no prejudice in fact occurred."  Clena Invs., Inc. v. XL Specialty Ins. Co., No. 10-cv-62028, 2012 WL 1004851, at *4 (S.D. Fla. Mar. 26, 2012) (citations omitted); see also Mount Vernon Fire Ins. Co. v. Editorial Am., S.A., 374 So. 2d 1072, 1074 (Fla. Dist. Ct. App. 1979).  So, to prevail on summary judgment on notice grounds, a party must first demonstrate through undisputed facts (1) whether notice was timely under the policy, and (2) whether prejudice exists, either by operation of the unrebutted presumption or otherwise.  See Mid-Continent Cas. Co. v. Basdeo, 742 F. Supp. 2d 1293, 1335 (S.D. Fla. 2010).

---

[4] The parties do not dispute that the Accident and Wrongful Death Action constitute an "occurrence" and "suit" under the Policy.  Rather, at issue is whether Catlin had a duty to indemnify and defend Rafi Brothers in connection with the Wrongful Death Action given Rafi Brothers' alleged breach of the Policy's notice provisions.

B.     **Notice Was Late As a Matter of Law**

The Court's discussion thus begins with whether Catlin received timely notice.

Courts have interpreted "prompt," "as soon as practicable," "immediate," and comparable phrases to mean that notice should be given with "reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co., 599 F. App'x 875, 879 (11th Cir. 2015) (citations omitted).  While the question of what constitutes a reasonable time under the circumstances is typically one for the trier of fact, where, as here, "the undisputed factual record establishes notice is so late that no reasonable juror could find it timely, [] courts will deem the notice untimely as a matter of law." Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co., 916 F. Supp. 2d 1244, 1258 (M.D. Fla. 2013).  To be sure, notice first provided to an insurer four years after an "occurrence" and nearly three years after "suit" is untimely as a matter of law. See, e.g., Yacht Club, 599 F. App'x at 880 (finding notice given four years after the occurrence untimely as a matter of law); Wheeler's Moving & Storage, Inc. v. Markel Ins. Co., No. 11-80272-CIV, 2012 WL 3848569, at *6 (S.D. Fla. Sept. 5, 2012) (finding notice provided two years after the occurrence and eighteen months after suit was filed untimely as a matter of law).  Some courts have even held that a period of six months or less is late as a matter of law. See PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co., 566 F. App'x 845, 849 (11th Cir. 2014) (citing cases).

Based on this precedent, the Court finds that notice in this case was late as a matter of law.  Even though the Policy required Rafi Brothers to notify Catlin of any "occurrence" or "suit" as "soon as practicable," Rafi Brothers never did, despite being aware of the Accident and Wrongful Death Action almost immediately.  Rafi Brothers' failure to comply with its notice obligations is even more inexplicable given that, three months after being sued, its insurance agent reported no losses on record under the Policy.  Catlin's only notice came on May 25,

8

2011—more than four years after the Accident and nearly three years after the Wrongful Death Action was filed. Under these circumstances, no reasonable fact finder could determine that notice was timely.

Aseff argues that there is a genuine issue of material fact as to whether notice was timely. See Pl.'s Resp. in Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Resp.") at 3–4. She offers two pieces of evidence in support. First, Aseff cites the deposition of Arquimedes Rafi, Jr., Rafi Brothers' corporate representative, where he stated that Rafi Brothers contacted the "insurance company" immediately following the Accident. See Pl.'s Resp. at 3–4. Second, Aseff points to the deposition of Don Gonzalez, Esq., Rafi Brothers' defense counsel, where he purportedly said that Rafi Brothers notified Catlin of the lawsuit right after being served. Id. at 4.

Aseff, however, mischaracterizes the evidence she relies on. When Rafi Jr. testified that Rafi Brothers reached out to the "insurance company," he did not mean Catlin, as Aseff maintains, but the insurance agent, Pan Am. See Gonzalez Dep. 30:25–31:1-7, Mar. 6, 2015 (ECF No. 34-2). And, contrary to Aseff's contention, Gonzalez did not testify that he sent a copy of the lawsuit to Catlin. Rather, Gonzalez testified that while he was under the belief that Rafi Brothers had notified Catlin, he never confirmed whether his client had in fact done so. See Gonzalez Dep. 22:4–21 (ECF No. 67-2).

In short, because it remains uncontroverted that the only notice Catlin received came more than four years after the Accident and nearly three years after commencement of the Wrongful Death Action, notice was late as a matter of law.

### C. Catlin Was Prejudiced As a Matter of Law

Having determined that notice was late, Catlin is presumed to have been prejudiced, and the burden shifts to Aseff, as assignee of Rafi Brothers' rights under the Policy, to rebut this presumption.

9

In the context of claims involving personal injury, "prejudice is more readily apparent in a case involving tort law where [the] inability of the insurer to promptly discover and interview potential witnesses or keep track of a party's injuries or losses might more clearly prejudice defense of [a] later action." Hartford Acc. & Indem. Co. v. Phelps, 294 So. 2d 362, 365 (Fla. Dist. Ct. App. 1974). When considering the question of prejudice, the focus is on whether the delayed notice has frustrated the underlying purpose of the notice provision. See, e.g., 1500 Coral Towers Ass'n, Inc. v. Citizens Prop. Ins. Corp., 112 So. 3d 541, 544 (Fla. Dist. Ct. App. 2013). The purpose of prompt notice serves "to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." Yacht Club, 599 F. App'x at 881 (citation omitted). A party can overcome the presumption of prejudice by showing that "an investigation conducted immediately following the accident would not have disclosed anything materially different from that disclosed by the delayed investigation, and thus the outcome of the liability suit would not have been different had the notice of the accident been received timely." Niesz v. Albright, 217 So. 2d 606, 608 (Fla. Dist. Ct. App. 1969).

Aseff cannot rebut the presumption of prejudice to which Catlin is entitled. Rafi Brothers' failure to provide timely notice precluded Catlin from interviewing critical witnesses and obtaining crucial evidence. In particular, the late notice eliminated Catlin's ability to speak with Daniel Plasencia, interview Arquimedes Rafi, Sr., concerning Rafi Brothers' knowledge of property conditions that may have caused or contributed to the Accident, document the scene of the Accident, and inspect the equipment involved in the Accident. Rafi Brothers' inaction in the Wrongful Death Action only compounded Catlin's prejudice. Rafi Brothers conducted no discovery on the issue of liability or damages. Because Rafi Brothers' late notice frustrated

Catlin's ability to conduct a proper investigation, assess its rights and liabilities, and defend against the claim, Catlin was prejudiced as a matter of law.

Aseff dismisses any such prejudice. She argues that Catlin was in a position to conduct substantially the same investigation had it received timely notice. See Pl.'s Resp. at 4–13. Aseff maintains that neither Plasencia, Rafi Sr., nor the equipment involved in the Accident would have revealed anything materially different. See id. at 7–9. She claims that Catlin had the ability to identify and depose all relevant non-party witnesses. See id. at 5–7. And she contends that Catlin's own claims manuals confirm that the insurer had all of the evidence, information, and analyses it needed to conduct a thorough investigation. See id. at 10–11.

The Court is unpersuaded. Despite Aseff's efforts to paint a different picture, the fact remains that the late notice precluded Catlin from conducting a proper investigation into the Accident. This, in turn, compromised Catlin's ability to defend against the Wrongful Death Action. Under these circumstances, no reasonable fact finder could determine that Catlin was not prejudiced.

## IV. CONCLUSION

Catlin had no duty to defend or indemnify Rafi Brothers. Not only was notice of the Accident and Wrongful Death Action untimely, but the late notice prejudiced Catlin's ability to investigate the incident and fight the wrongful death claim. Rafi Brothers' material breach of the Policy thus relieved Catlin of its contractual obligations.

Accordingly, it is ORDERED AND ADJUDGED as follows:

1. Defendant Catlin Specialty Insurance Company's Motion for Final Summary Judgement (ECF No. 34) is GRANTED;

2. Plaintiff Gypsy Aseff's Motion for Summary Judgment (ECF No. 36) is DENIED;

    3.    All other pending motions are DENIED AS MOOT; and

    4.    The Clerk of Court is instructed to CLOSE this case.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>24th</u> day of June, 2015.

_____

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:    All counsel of record